Argued March 30, affirmed April 14, 1914.

## TATE v. NORTH PACIFIC COLLEGE.*

(140 Pac. 743.)

**Colleges and Universities—Requirements for Degree—"Satisfactory Examinations."**

1.   The requirement for a diploma and degree, set forth in the catalogue of a dental college, that the candidate shall pass satisfactory examinations, means that the examinations shall be satisfactory to the faculty, whose duty it is to conduct them.

[As to the legal significance of the word "satisfactory," see note in 54 Am. Rep. 711.]

**Colleges and Universities—Contract for Tuition.**

2.   The issuance by a college of a catalogue stating the requirements for graduation and for the conferring on candidates of the degree of Doctor of Dental Medicine, and the entrance, matriculation and attendance of sessions by a student with knowledge of those requirements, constitutes a contract by the student to comply with the requirements, and by the college to issue a diploma on compliance with the requirements.

**Colleges and Universities—Right to Degree—Conclusiveness of Faculty Decision.**

3.   The faculties of colleges, who are authorized to examine their students and pass on the question whether students have performed all the conditions required to entitle them to degrees, exercise *quasi*-judicial functions, and their decisions are conclusive if they act within their jurisdiction, in good faith, and not arbitrarily.

[As to the authority, duties, liabilities and powers of teachers, see notes in 76 Am. Dec. 546; 102 Am. St. Rep. 537.]

**Colleges and Universities—Action—Burden of Proof.**

4.   In a suit by a student to compel a college to confer the degree of Doctor of Dental Medicine upon him, where he alleges that the faculty, after informing him that he had passed with good standing, acting in bad faith and arbitrarily, purposely mislaid or destroyed

*The authorities on the question of *mandamus* to compel issuance of diploma by college are reviewed in a note in 3 L. R. A. (N. S.) 1115.                                                    REPORTER.

his examination papers, insisted on his taking another examination, and then gave him so low a grade as to prevent his passing, it was incumbent on him to prove such bad faith and misconduct.

**Colleges and Universities—Action—Sufficiency of Evidence.**

5. In a suit by a student, to compel a college to confer a degree upon him, evidence *held* not to show that the faculty had acted in bad faith or arbitrarily in refusing to give him a passing grade, or to confer a degree upon him.

**Evidence—Hearsay—Newspaper Publication.**

6. In a suit by a student to compel a college to confer a degree upon him, pictures purporting to show the college graduating class and a statement clipped from a newspaper were not competent evidence, being hearsay.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by George S. Tate against the North Pacific College, a corporation, for a decree requiring the defendant to issue to the plaintiff a diploma, and to confer upon him the degree of Doctor of Dental Medicine. The court below rendered a decree in favor of the defendant. The plaintiff appeals. The facts appear in the opinion of the court.

AFFIRMED.

For appellant there was a brief over the names of *Mr. William H. Fowler, Mr. T. J. Hewitt* and *Messrs. Johnson & Stout,* with an oral argument by *Mr. Fowler.*

For respondent there was a brief over the names of *Mr. M. M. Matthiessen* and *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Matthiessen.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant is a corporation, organized and existing under the laws of this state, and engaged in conducting a college for the education and training of

students in the science of dentistry. It had power to make rules and regulations for the government of its students, in the manner and methods of study, and to adopt rules, fixing the conditions upon which it would grant to its students diplomas and degrees. The defendant, prior to the time that the plaintiff became a student in its college, adopted and published the following rule, fixing the conditions upon which it would graduate its students, and confer upon them the degree of Doctor of Dental Medicine: "The candidate must be twenty-one years of age, and must possess a good moral character, which will include good deportment while at college. Students who have devoted the required time to the study of dentistry, and have fulfilled all requirements, and passed satisfactory examinations in all the subjects of study, and have successfully completed the required infirmary course, receive the degree of Doctor of Dental Medicine." There were other rules as to the payment of tuition; the time required for graduation, etc. A student was required to attend the college three college years to entitle him to a diploma and a degree. The complaint alleges that the plaintiff entered the defendant college at the beginning of the fall term of 1905, and was enrolled as a student, and entered upon and pursued his studies in the college, under the direction of the faculty, during the school terms of 1905 and 1906, 1908 and 1909, and 1909 and 1910; that after taking the examination in the spring of 1910, he was told by the faculty of the defendant that his examination was satisfactory, and that he had passed with good standing, but that he could not receive his degree for the reason that he had not continued his studies for a sufficient length of time, according to the rules of the college, and that if he would complete his time, which was short, about two months, he should receive his diploma

and degree.   The complaint alleges, also, that, during the fall of 1910 and the spring of 1911, he made up his time, and completed his course, and was told by the faculty that everything was complete and satisfactory to the faculty and the defendant, and that he should receive his diploma and degree, and, with this understanding and promise, the plaintiff paid, and the defendant accepted, the graduation fee, which was not due until graduation, and the plaintiff became and was entitled to receive from the defendant his diploma and degree.   The complaint alleges, also, that during the spring of 1911, the defendant, through its faculty, who were its agents and servants, resolved to deprive the plaintiff of his rights and prevent his receiving his degree and diploma, and that after he had passed his final examination they purposely mislaid or destroyed his examination papers, and that the faculty of the defendant declared that they did not know his standing, on account of said loss of papers, and insisted that he take another examination, which said faculty stated was a mere matter of form, which said examination plaintiff charges was unnecessary, unreasonable and unusual, and was insisted on in order that it might be in the power of the faculty to give him such a low grade that he could not pass.   That, without knowing or suspecting the intent on the part of the faculty to deprive him of his degree and standing, the plaintiff agreed to and did take another examination, on which examination he was entitled to high credit; but, for the purpose of making the plaintiff fail in said examination, the faculty gave the plaintiff low markings on some of the studies theretofore passed by a high grade, thereby bringing the average down below the required grade.   The complaint alleges, also, that the grade required to pass in said college is 75 per cent; that the plaintiff's average for his senior year, in spite of the

low grade given him by the defendant, was 67 per cent, and that his average, for the full three years, in spite of the low grading was 72.5 per cent. The complaint alleges that the plaintiff was entitled to a diploma and a degree.

The answer denies most of the allegations of the complaint. It admits that the plaintiff paid all tuition and fees. The catalogue of the defendant for 1905–1906, on page 1 thereof, provides that the regular course of instructions in the defendant college for those desiring to obtain a degree is composed of three regular sessions of 32 teaching weeks each, exclusive of vacations and holidays, and that the session for 1905–1906 should begin October 2, 1905, and it states, also, that "students will not be given credit for a full course, when admitted later than 10 days after the opening of the session."

There seems to be a conflict in the decisions as to whether, in a case of this kind, the person demanding a diploma should proceed by *mandamus,* or bring a suit in equity for specific performance of contract.

It was held in *People ex rel. Cecil* v. *Bellevue Hospital,* 60 Hun, 107 (14 N. Y. Supp. 490), and in *State* v. *Lincoln Medical College,* 81 Neb. 533 (116 N. W. 294), 81 Neb. 545 (118 N. W. 122, 17 L. R. A. (N. S.) 930), that *mandamus* is a proper remedy, while *State* v. *Milwaukee Medical College,* 128 Wis. 7 (106 N. W. 116, 116 Am. St. Rep. 21, 8 Ann. Cas. 407, 3 L. R. A. (N. S.) 1115), and other cases, hold that a suit for specific performance is a proper remedy. In this case no question is raised as to the proper remedy, and we will assume that the court has jurisdiction of the matter in controversy, without going into the authorities upon this point.

1. Among the requirements for a diploma and a degree set forth in the catalogue of the defendant, and

set out *supra,* it is required that the candidate shall "pass satisfactory examinations." This means that his examination shall be *satisfactory to the faculty,* whose duty it is to conduct the examinations.

2. The defendant issued its catalogue, stating its requirements for graduation and for the conferring upon candidates of the degree of Doctor of Dental Medicine, and the plaintiff, with knowledge of those requirements, entered the college, matriculated and attended its sessions, with the intention of obtaining said degree. These acts on the part of the college and of the plaintiff constituted a contract. The plaintiff agreed that he would comply with all the requirements of the college, and the college agreed that it would issue to him a diploma, and confer upon him said degree *on his complying with said requirements.* To entitle the plaintiff to a diploma and a degree he must have fulfilled all of said requirements.

3. In *People* v. *Bellevue Hospital,* 60 Hun, 108 (14 N. Y. Supp. 490), the court says:

"The circulars of the respondent indicate the terms upon which students will be received, and the rights which they were to acquire by reason of their compliance with the rules and regulations of the college in respect to qualifications, conduct, etc. When a student matriculates under such circumstances, it is a contract between the college and himself that, if he complies with the terms therein prescribed, he shall have the degree, which is the end to be obtained. This corporation cannot take the money of a student, allow him to remain and waste his time (because it would be a waste of time if he cannot get a degree), and then *arbitrarily* refuse, when he has completed his term of study, to confer upon him that which they have promised, namely, the degree of doctor of medicine which authorizes him to practice that so-called science. It may be true that this court will not review the discretion of the corporation in the refusal, for any reason

or cause, to permit a student to be examined and receive a degree; but where there is an absolute and arbitrary refusal, there is no exercise of discretion."

In *People* v. *New York H. M. Medical College and Hospital* (Sur.), 20 N. Y. Supp. 380, the court says:

"Courts may be versatile, but they must be careful not to infringe upon the discretion vested in excise boards, *colleges,* or inferior tribunals, nor to substitute its discretion for theirs. The determination by these bodies of any questions within the scope of their jurisdiction is, as it should be, as conclusive and free from control upon *mandamus* as that exercised by the highest jurisdictions in the country. * * In the present instance, the [defendant] college, in passing on the qualifications of the relator, acted as a *quasi* judicial body, exercising an ample discretion vested in it by the act under which it was incorporated, and its determination cannot be reversed upon *mandamus.* * * The relator charges bad faith and ill will upon the part of some of the officials of the college, but these allegations do not alter the underlying fundamental principle which controls. The court cannot re-examine the relator as to his qualifications to practice medicine, nor go over the studies in which he is said to be deficient. If it attempted to do so, the relator's road would be easy, for, with his experience, imperfect though it may be, he would no doubt pass a better medical examination than any court could be expected to give him."

7 Cyc. 289 says:

"A college or university may, however, refuse a degree to a contumacious student, or to one who has not complied with the conditions required therefor, but it cannot *arbitrarily* refuse to allow one who has complied with such conditions the right to take the final examination which would entitle him to a degree or deny him a certificate of attendance and that he has satisfactorily passed the final examinations, when the conduct on account of which his degree is denied occurs *after* final examinations."

There is some doubt as to the extent to which courts can review the action of colleges in refusing diplomas and degrees to their students. The faculties of colleges, who are authorized to examine their students and pass on the question whether the students have performed all the conditions prescribed, to entitle them to degrees, exercise *quasi*-judicial functions, and their decisions are conclusive, if they act within their jurisdiction, and in good faith, and not arbitrarily.

4. In this case, the plaintiff contends that the faculty acted in bad faith and arbitrarily, in refusing him a diploma and a degree. He claims that he successfully passed the final examinations in 1910, and that the faculty informed him that he had passed with good standing; but that he could not receive his degree at that time, because he had not continued his studies for a sufficient length of time, and that, if he would complete his time, he would receive his diploma. He alleges, also, that he completed his time, and that in 1911, the defendant, through its faculty, decided to refuse to grant him a diploma and a degree, and purposely mislaid or destroyed his examination papers, and declared that they did not know his standing on account of the loss of said papers, and insisted that he take another examination. He alleges that the last-mentioned examination was unnecessary, unreasonable and unusual, and that it was insisted on in order that the faculty might give him a grade so low as to prevent his passing and, not knowing or suspecting the intention of the faculty to deprive him of his degree, he agreed to take, and did take, another examination. He alleges that his second examination was of such a character as to entitle him to high credit; but that the faculty, for the purpose of causing him to fail in said examination, gave him low markings in some of the studies, thereby

bringing his average down below the required grade, and then refused to graduate him. Said misconduct is charged in the complaint. It was incumbent on the plaintiff to prove such bad faith and misconduct.

5. While the plaintiff, in his complaint alleges that he passed the examinations in the spring of 1910, and that the faculty informed him that he passed with good standing, he admits, on page 28 of the evidence, that at the examinations in 1910 he did not take the infirmary examinations, and he admits, also, that that was one of the most important examinations in the course. Hence we must conclude that in 1910 he did not pass the examinations in all of the branches of the course, and that his contention that the only thing that prevented his graduating at that time was the fact that he had to make up about two months' time is not proved by the evidence. The plaintiff testifies that Dr. Miller, dean of the faculty, told him in 1911 that he did not think that there was any reason why he should not graduate that year, and that he had a very good record; but this statement was made before the final examination. The plaintiff testifies that he made up the time in accordance with the requirements of Dr. Miller. After the final examination in 1911 the plaintiff says that Dr. Miller told him that he had not given the plaintiff any grade in 1910, and, being asked whether Dr. Miller had told him that his grade was satisfactory, he answered: "*He did not say that it was. He simply said that he had mislaid my papers, and had not given me any grades in my 1910 examinations.*" He testifies that four members of the faculty examined him in 1911, when he failed in part of the work. The plaintiff admits that he was treated properly in the examinations for the freshmen and junior years, and he admits that his grading in most of his

written work was very low, and that it ranged from 70 to 80 per cent.

6. The pictures and the statement clipped from the "Oregonian," containing pictures of what purported to be the graduating class of the college for 1910, were not competent evidence. They were mere hearsay. There was nothing to show that the college gave out the information contained in said clippings, or in any manner authorized its publication.

We have examined the evidence and the authorities cited in the briefs, and some others, and we are constrained to find that the plaintiff failed to make out a *prima facie* case. He charges the faculty with misconduct; but fails to swear to it, or prove it.

The notice that the defendant served on him, notifying him that he would not be granted a degree, stated that *the faculty* (not Dr. Miller) had adjudged that he was not qualified to receive the degree. His grading for the first and second years was very low. He failed to prove that the faculty was guilty of misconduct or bad faith, or that they acted arbitrarily. If the plaintiff had been given, at the last examination, all the credits that he claims he should have been allowed, he would have passed by a very narrow margin. The power to determine whether the plaintiff was entitled to a degree was vested in the faculty of the defendant. They examined him in the various branches taught by the defendant, and required for graduation, and decided, after such examination, that he was not qualified to receive the diploma or the degree, and the college refused to graduate him. In the absence of proof of bad faith, or misconduct or arbitrary action, on the part of the faculty, their decisions cannot be reversed by the court.

The unsworn statement made in the court below by Dr. Miller was not evidence, and we did not consider it.

Perhaps the plaintiff, by a few months' study and work, can make up his deficiencies and obtain a degree from the defendant or some other college.

The decree of the court below is affirmed.

AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE EAKIN concur.