Argued and submitted August 30, decision of the Court of Appeals affirmed, in part on other grounds; judgment of the circuit court reversed and case remanded to the circuit court December 30, 1993

James Joseph HICKEY,
*Respondent on Review,*

*v.*

Merthal SETTLEMIER,
*Petitioner on Review.*

(CC 90-1082; CA A69975; SC S39929)

864 P2d 372

John F. Kilcullen, of Brown, Roseta, Long & McConville, Eugene, argued the cause and filed the petition for petitioner on review.

Andrew P. Ositis, Salem, argued the cause and filed a response for respondent on review.

PETERSON, J.

## PETERSON, J.

This action for defamation involves statements allegedly made by defendant to the reporter and camera crew of a national television program, "20/20." The trial court granted defendant's motion for summary judgment on the ground that a decision by a federal administrative law judge in an administrative proceeding preclusively established the truth of the statements allegedly made by defendant. The Court of Appeals reversed and remanded, holding that the agency decision was not preclusive. *Hickey v. Settlemier*, 116 Or App 436, 841 P2d 675 (1992). Our consideration of the case involves two issues. The first is whether, under the applicable rules of issue preclusion, the federal agency's decision established the truth of the allegedly defamatory statements. The second is whether a television reporter's account, contained in a videotape of the "20/20" program, attributing to defendant certain statements, is admissible over a hearsay objection to establish publication of the allegedly defamatory statement.[1]

The record shows that on June 10, 1988, plaintiff obtained a federal license to sell animals for medical research. Plaintiff's facilities were inspected several times by the United States Department of Agriculture Animal and Plant Health Inspection Service.

Based on information obtained during those inspections, in November 1988 the Department of Agriculture filed a formal complaint alleging that plaintiff had violated the Animal Welfare Act, 7 USC §§ 2131-57 (1988); 9 CFR §§ 1.1-12.10 (1991).[2] In January 1990, following an agency hearing at which plaintiff was represented by counsel, an administrative law judge suspended plaintiff's license for one year, assessed a civil penalty of $10,000, and issued a cease and desist order regarding the various violations. Plaintiff

---

[1] Publication is a necessary element of plaintiff's defamation action. *See State ex rel Advanced Dictating v. Dale*, 269 Or 242, 247, 524 P2d 1404 (1974) ("Publication or communication of the defamatory statement [to a third person] is an essential element of an action for defamation.").

[2] The alleged violations included unsanitary conditions, inadequate animal care, poor record keeping, and interference with Department of Agriculture inspections of plaintiff's facilities.

appealed that decision to the Judicial Officer at the Department of Agriculture who, for the most part, adopted the opinion of the administrative law judge.

Defendant, who is plaintiff's neighbor, was interviewed by the nationally televised program "20/20"[3] in connection with a segment that "20/20" was producing that focused on "pet bandits."[4] The record in this case contains a videotape of the program that shows defendant making certain statements and an ABC reporter saying:

> "[M]ore than 300 people in central Oregon have complained that their pets were stolen and delivered to [plaintiff's] operation. Many want [plaintiff's facility] closed down, including [plaintiff's] own godmother, [defendant], who lives next door. *She says there's no doubt in her mind that he's mistreating animals and dealing in stolen pets.*" (Emphasis added.)

In her deposition, which was offered in connection with her motion for summary judgment, defendant denied making any statement to the effect that plaintiff mistreats animals or deals in stolen pets.

Plaintiff then brought this defamation action. His complaint alleged that defendant made three false statements:

"1. That plaintiff is mistreating animals and dealing in stolen pets. [Hereinafter referred to as allegation 1.]

"2. That plaintiff subjects the animals to inhuman [*sic*] conditions, including crowding of animals in dirty cages, denying the animals food, water, and shade. [Hereinafter referred to as allegation 2.]

"3. That weekly, or more often, plaintiff shoots animals that are not suitable for research, leaving shell casings and pools of blood as evidence. [Hereinafter referred to as allegation 3.]"

As stated in the opening paragraph, there are two issues to be decided. Because of the way that the two issues arose, we set forth, in some detail, the procedural history of this case.

---

[3] "20/20" is a weekly production of ABC News.

[4] "Pet Bandits" was the title of the "20/20" segment.

Defendant moved for summary judgment under ORCP 47. Her motion, supported by affidavits and depositions, asserted "that there is no genuine issue as to certain material facts and, therefore, the defendant is entitled to a judgment as a matter of law." More specifically, defendant claimed to be entitled to summary judgment for two reasons. The first reason was that the federal agency's decision preclusively established the truth of allegations 2 and 3. The second reason was that, because plaintiff's sworn deposition testimony, denying making the statements attributed to her relative to allegation 1, was uncontradicted, the record contained no evidence of publication of allegation 1. Concerning allegation 1, defendant's motion stated:

"The correspondent's statement was the *only* statement in the segment concerning stolen animals. In other words, the defendant said *nothing* on-camera about stolen animals. Also, she said nothing off-camera about stolen animals. There was no communication or publication, by the defendant, of this allegedly defamatory statement. Therefore, the statement cannot support a claim against her."

The trial judge appears to have granted defendant's summary judgment motion solely on the ground that the federal agency's order established "that the statements made by the defendant which were alleged to be slanderous, are true or substantially true." There is no suggestion in the trial court's written opinion that the trial judge relied on defendant's sworn testimony denying that she made the statements attributed to her by the correspondent relating to allegation 1.

The Court of Appeals reversed the trial court, but took a slightly different tack than did the trial judge. Relative to issue preclusion, the Court of Appeals painstakingly compared the agency's order with allegations 2 and 3 of the complaint and concluded:

"[W]e do not think it can be said, as a matter of law, that the earlier violations established conclusively the substantial truth of defendant's statements. * * * [T]he truth of the statements is a question of fact for the jury." *Hickey v. Settlemier, supra,* 116 Or App at 440.

Concerning allegation 1 — "that plaintiff is mistreating animals and dealing in stolen pets" — the Court of

Appeals held (with no reference to or discussion of the hearsay aspect of the videotape):

"Finally, defendant argues that she is entitled at least to a partial summary judgment, because she denied making the statement regarding stolen pets and plaintiff failed to produce any admissible evidence that defendant published that statement. Publication is an essential element in a defamation action. Although defendant denies making the statement, the videotape of the television show that is in the record shows the correspondent stating that defendant did make the statements. Viewing the evidence in the light most favorable to plaintiff, the non-moving party, we conclude that the evidence is sufficient to make the publication of the statement a disputed question of fact." *Id.* at 441-42 (citation omitted).

In sum, the trial court ruling raised only one issue — whether the agency's decision established the truth of the statements attributed to defendant, as a matter of law, under the law relating to issue preclusion. The Court of Appeals considered and decided two questions: (1) the issue considered by the trial court relating to issue preclusion; and (2) whether the videotape was sufficient to establish publication by defendant of allegation 1.

■ We first examine whether the issues determined in the administrative proceeding should be given preclusive effect in the present case. This case is governed by the common law of issue preclusion. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 862 P2d 1293 (1993) (applying common law of issue preclusion to determine whether administrative proceeding had preclusive effect in subsequent civil action). In *Nelson*, this court discussed the doctrine of issue preclusion and stated:

"If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect." 318 Or at 104 (citations and footnote omitted).

In the administrative proceeding before the Department of Agriculture, the administrative law judge made 7 findings of fact and 14 combined findings and conclusions. Defendant relies on those 14 combined findings and conclusions to establish the truth of defendant's alleged statement. None of the agency's findings establish, for issue preclusion purposes, that plaintiff "is mistreating animals," subjected animals to "inhumane conditions," was "dealing in stolen pets," or "shoots animals that are not suitable for research." Because the issues in the two proceedings are not identical, the truth of defendant's alleged statements set forth in allegations 2 and 3 has not been established. On that ground, the Court of Appeals properly reversed the trial court's entry of summary judgment in favor of defendant.

■ The second issue — the one not decided by the trial court — is whether the "20/20" videotape is admissible evidence on summary judgment to prove publication by defendant. ORCP 47 is the relevant rule. ORCP 47 C provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

ORCP 47 D in part provides:

"Except as provided by section E. of this rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the

adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."[5]

Because "an adverse party may not rest upon the mere allegations or denials of that party's pleadings," unless summary judgment is appropriate because of admissions in the pleadings, the right to summary judgment must be established by depositions or affidavits that "set forth such facts as would be admissible in evidence." ORCP 47 D. The court must view the admissible evidence that is in the record in the light most favorable to the nonmoving party, the plaintiff in this case. If there remains any genuine issue of material fact, the motion must be denied. ORCP 47 C; *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 237, 855 P2d 626 (1993).

Strictly speaking, the Court of Appeals could have ended its opinion after it decided the issue preclusion question. But it chose to address the issue of whether the videotape was admissible to prove publication by defendant. In view of the Court of Appeals' ruling on the admissibility of the videotape to prove publication by defendant, it is likely that that ruling will be relied on by plaintiff and the trial judge when the videotape is offered at trial. We therefore address the question whether the videotape is admissible to prove publication of allegation 1 by defendant.

Defendant moved for summary judgment and offered sworn deposition testimony that she did not make the allegedly defamatory statements contained in allegation 1 concerning mistreatment of animals and dealing in stolen pets.[6] Relying on the videotape, the Court of Appeals concluded that publication was a question of fact. The Court of Appeals, therefore, must have determined that the videotape was admissible to prove that defendant made the statements referred to in allegation 1.

---

[5] ORCP 47 D is based on *former* ORS 18.105. *See* Merrill, Oregon Rules of Civil Procedure: 1992 Handbook 130 (1992) (so stating). *Former* ORS 18.105 was based on FRCP 56.

[6] ORCP 47 D expressly provides for the introduction of evidence by affidavit on motions for summary judgment. ORCP 47 D expressly provides that "supporting and opposing affidavits shall be made on personal knowledge."

Plaintiff's defamation action is based on three statements allegedly made by defendant. Plaintiff offered the videotape as evidence that the statements were made. The videotape shows defendant herself making two statements, statements relevant to allegations 2 and 3 above. In addition, the videotape shows the reporter stating, "[Defendant] says there's no doubt in her mind that [plaintiff is] is mistreating animals and dealing in stolen pets." The reporter's statement is relevant to allegation 1 and, because the statement only appears in the record on the videotape, it presents a potential hearsay problem under OEC 801(3).[7]

Some statements are themselves significant legal facts, that is, the substantive law attaches certain consequences to utterances so that the mere making of the statement becomes an issue in the case. *Utley v. City of Independence*, 240 Or 384, 393, 402 P2d 91 (1965). Such statements made out-of-court are not offered for the truth of what they state and, therefore, are not hearsay. Instead, they are classified as verbal acts. *Hryciuk v. Robinson*, 213 Or 542, 566, 326 P2d 424 (1958).

Defamation is one example of a verbal act. The making of the defamatory statement is itself of legal significance. Therefore, when an allegedly defamatory out-of-court statement is offered, it is not being offered to prove its truth, but that it was made. Indeed, it is legally significant because of its alleged untruth. Therefore, the allegedly defamatory statements made directly by defendant on the videotape are not hearsay.

■ Defendant denied making the statement attributed to her by the reporter concerning allegation 1. In the absence of the reporter's comment attributing those statements to defendant, there was no evidence of publication of allegation 1 by defendant. The question, then, is whether the reporter's statement is hearsay.

When statements made to a television reporter are sought to be proven by offering a videotape of the broadcast,

---

[7] OEC 801(3) provides:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

as in the instant case, a problem of multiple hearsay is presented. OEC 805[8] states that multiple hearsay is admissible provided that each level of hearsay satisfies an exception to the hearsay rule. *State v. Pinnell*, 311 Or 98, 117 n 29, 806 P2d 110 (1991). The videotape is being offered to prove what the reporter heard defendant say. That is the first level of hearsay, because this brings into play the perception, recollection, narration, and sincerity of the reporter. If defendant's words are also being offered for their truth, a second level of hearsay exists, because this brings into play the perception, recollection, narration, and sincerity of defendant.

The statement made by the reporter on the tape is hearsay within the definition of OEC 801(3), because it is being offered to prove its truth (that defendant said that plaintiff was "mistreating animals and dealing in stolen pets"). Defendant's alleged statement within the reporter's statement is not hearsay, because it is a verbal act. The requirement of OEC 805 applies to nonhearsay statements within hearsay. *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 389 n 7, 856 P2d 625 (1993). Therefore, in order for the reporter's account to be admissible, the reporter's statement must come within an exception to the hearsay rule under OEC 803 or 804.

Analytically, a television videotape is analogous to a newspaper article. The facts of this case are similar to the facts in *Bevan v. Garrett*, 284 Or 293, 586 P2d 1119 (1978). *Bevan* involved a defamation claim against a person who allegedly defamed the plaintiff in statements made to a newspaper reporter, statements that were reported in the newspaper. The defendant moved for summary judgment under *former* ORS 18.105, the predecessor to current ORCP 47. He supported his motion with an affidavit in which he denied making the allegedly defamatory statements to the reporter. The plaintiff filed no affidavit in opposition to the defendant's affidavit denying publication. The trial court granted summary judgment, and the plaintiff appealed, arguing that he

---

[8] OEC 805 provides:

"Hearsay included within hearsay is not excluded under OEC 802 if each part of the combined statements conforms with an exception set forth in OEC 803 to 804."

could rely on the allegations of his complaint to prove publication.

This court affirmed the granting of summary judgment stating that, in opposing summary judgment, a party could not rely simply on the allegations of the complaint, *id.* at 298 (a rule now codified in ORCP 47 D). Although the foregoing is the specific holding in the case, it is implicit in the *Bevan* decision that, by itself, a newspaper article is hearsay, and not admissible to prove publication by a defendant. Had the article been admissible to prove publication, the court's discussion of a party's inability to simply rely on the party's pleadings would have been beside the point.

■ ■ What was true of the newspaper article in *Bevan* is true of the videotape in the case at bar. *Cf. Tate v. North Pacific College*, 70 Or 160, 169, 140 P 743 (1914) (newspaper article is "mere hearsay"). *See also Horta v. Sullivan*, 4 F3d 2, 8 (1st Cir 1993) ("The [newspaper] account is hearsay, inadmissible at trial to establish the truth of the reported facts."). The reporter's hearsay statement on the videotape is not within any hearsay exception and is, therefore, inadmissible to establish publication by defendant under ORCP 47 D.[9]

---

[9] As stated in the text, a party moving for summary judgment must establish, by "such facts as would be admissible in evidence," that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47 C and D. A court, in considering a motion for summary judgment, can consider only "admissible evidence." Affidavits filed in support of the motion must be by "affiant[s who are] competent to testify to the matters stated therein." ORCP 47 D.

ORCP 47 is silent concerning how objections should be made to proffered evidence. Given the foundation and admissibility requirements of ORCP 47 D, parties must be sensitive to the need for timely objection to proffered evidence, because, in the absence of such objections, the trial court can consider any evidence, including hearsay evidence not objected to, that is relevant to any material issue. Here, for example, the videotape is admissible to prove publication of those statements made by defendant on the tape. But the videotape is not admissible, over a hearsay objection, to prove publication of the statements attributed to defendant by the television reporter. Defendant consistently objected to the inadmissible portions of the videotape.

Parties also should be sensitive to the rule that a general objection to an entire exhibit that contains irrelevant material will avail nothing on appeal. In the absence of a specific objection to a specific part of a document or affidavit that contains inadmissible material, an appellate court will hold that no error occurred in considering the entire exhibit. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) ("One who objects to an exhibit on the ground that it is not to be received

The effect of the inadmissibility of a portion of the videotape is that plaintiff has not set forth specific facts showing that there is a genuine issue of material fact concerning publication of the statement concerning mistreatment of animals and dealing in stolen pets, the first of three allegations made by plaintiff. *See* ORCP 47 D. Even so, we affirm the decision of the Court of Appeals ordering a new trial. If *any* issue of material fact exists (and issues of material fact do exist), a motion for summary judgment must be denied. Because the federal agency's order is not dispositive of all the defamation issues, the truth of all the allegedly defamatory allegations has not been established as a matter of law, and summary judgment should not have been granted. Therefore, the case must be remanded to the trial court.

The decision of the Court of Appeals is affirmed, in part on other grounds. The judgment of the circuit court is reversed, and the case is remanded to the circuit court.

---

because it contains irrelevant material must object to those specific parts, and an objection to the entire exhibit, if it contains relevant matter, will 'avail nothing on appeal.' *Gallagher v. Portland Traction Co.*, 181 Or 385, 392, 182 P2d 354 (1947).").