argued and submitted June 15, 1993, affirmed; motion to amend complaint denied
June 8, 1994

Bettie R. BAXTER,
*Respondent,*

*v.*

M. J. B. INVESTORS,
an Oregon corporation,
dba Senior Professional Care,
*Appellant.*

(16-91-04394; CA A76780)

876 P2d 331

Kathleen M. Fritton argued the cause for appellant. With her on the briefs were Donald K. Armstrong and Armstrong, McCullen & Philpott, P.C.

Martha C. Evans and Evans, Harrison & Pease filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals from a judgment entered on the basis of a jury verdict for plaintiff in this action to recover minimum wage, overtime compensation and damages for discrimination on the basis of physical disability. The primary issue is whether plaintiff, the resident manager of an adult foster care home, is entitled to receive a minimum wage and overtime compensation. We affirm.

In September, 1989, plaintiff was hired to work as the resident manager of the Lemming Street adult foster care home, which was owned by defendant. Her duties included cooking for the residents, managing the food budget, cleaning, doing laundry, dispensing and charting medications, keeping daily logs of the social and physical conditions of the residents, and assisting residents with bathing, grooming and dressing. She was scheduled to work five days on and two days off. On work days, plaintiff was required to remain on the premises of the adult foster care home for 24 hours. For each 24-hour shift, she received $40. She had her own furnished bedroom in the home, ate her meals on the premises while on duty, at no cost, was permitted to use the laundry facilities and supplies, and was not required to pay for utilities. While employed by defendant, plaintiff maintained no other residence.

At the time of hiring, plaintiff informed defendant that she could do only "easy" lifting. Defendant also was advised by the Senior and Disabled Services Division that plaintiff had a back condition that did not allow her to do heavy lifting and that, as a result, the Lemming Street foster care home could not admit residents who required "ongoing lifting or transferring." That requirement posed no problem for the Lemming Street home, which normally accommodated five elderly individuals who were able to manage most of their daily living activities themselves. However, in April, 1990, the physical condition of one resident deteriorated to the point that he needed to be lifted daily. Although the resident was moved to another facility within the month, plaintiff reported increased discomfort in her back as a result of the lifting.

Earlier in 1990, plaintiff had participated in an evaluation in which she rated her own job performance as unsatisfactory. Defendant informed plaintiff of the areas that needed improvement, and periodically performed inspections to monitor her progress. In May, 1990, plaintiff received notice that she was being terminated because her job performance had not improved.

Plaintiff brought this action, alleging that defendant was required by state and federal law to pay her minimum and overtime wages, but had failed to do so. She also alleged that she was terminated as a result of discrimination on the basis of physical disability. The jury returned a verdict for plaintiff. On a special verdict form, it made the following findings: (1) Plaintiff was paid less than minimum wage; (2) plaintiff was entitled to recover overtime wages; (3) defendant had not proven that the parties had an agreement that plaintiff would not be compensated for all of the hours that she was on the premises; (4) defendant's failure to pay minimum and overtime wages was not wilful; (5) plaintiff had a physical impairment which, with reasonable accommodation by defendant, would not have prevented the performance of her work; and (6) plaintiff had proven by a preponderance of the evidence that her physical impairment was a substantial factor in defendant's decision to discharge her. The jury awarded plaintiff $2,198.75 on the minimum wage claim, $4,844.25 on the overtime claim, and $20,000 on the discrimination claim.

On plaintiff's overtime claim, defendant moved for a directed verdict, a judgment notwithstanding the verdict and a new trial. It assigns error to the trial court's denial of those motions, arguing that plaintiff was not entitled to overtime because the parties had reached an agreement that, because of the circumstances of her employment, the length of her shifts did not represent the exact number of hours that she was deemed to be working. Defendant argues that, although plaintiff was on duty for 24 hours at a time, the parties had agreed to consider her actual "hours worked" to be closer to eight hours per shift. At trial, defendant took the position that, although the parties had not created a written agreement that plaintiff's actual work hours were understood to be substantially less than 24 hours per shift, they had agreed

that plaintiff would be paid $40 for each shift and would be further compensated by defendant's providing room and board. Defendant contends that that agreement was reasonable, was consented to by plaintiff before and during her employment with defendant, and should have barred plaintiff from bringing a claim for overtime.

In Oregon, the availability of overtime is regulated by several statutes and administrative rules, many of which relate to specific occupations. For example, the legislature has placed limits on the overtime hours that can be worked by firefighters and factory employees, ORS 652.020; ORS 652.070, has withheld from the Commissioner of the Bureau of Labor and Industries the authority to regulate the hours of employees harvesting agricultural crops, ORS 653.261(2), and has established specific overtime compensation provisions for other jobs, such as those in canneries, driers or packing plants, ORS 653.265. As a general rule, however, overtime compensation is available and is calculated according to OAR 839-20-030, which provides that

"all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay * * *."

The parties disagree about the number of hours that plaintiff actually worked, and, as a result, they reach different conclusions regarding the number of hours that were subject to overtime compensation. Their dispute centers on the effect of OAR 839-20-042, which we will refer to as the "hours worked" rule. That rule provides, in part:

"Under certain conditions an employee is considered to be working even though some of his/her time is spent in sleeping or in certain other activities:

"* * * * *

"(2) Duty of 24 hours or more: Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal times and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided * * * the employee can usually enjoy an uninterrupted sleep period * * *. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch period constitute hours worked.

"(3) Employees residing on employers' premises or working at home: *An employee who resides on his/her employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he/ she is on the premises.* Ordinarily, he/she may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he/she may leave the premises for purposes of his/her own. *To determine the exact hours worked, any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.*"[1] (Emphasis supplied.)

Defendant argues that subsection (3) of the "hours worked" rule applies to plaintiff, because she resided on her employer's premises even on days when she was off duty, was permitted to sleep, entertain and engage in personal pursuits at various times while on duty, had agreed to and accepted a salary of $40 for each 24-hour shift, was provided with meals, utilities, laundry facilities and a private room, knew that her position was not a nine-to-five job, and was not charged for remaining on the premises on her days off.

The trial court apparently agreed. It gave defendant's requested instruction, which read:

"If an employee resides on the employer's premises on a permanent basis or for extended periods of time, that employee is not considered as working all the time he/she is on the premises. To determine the exact number of hours worked under these circumstances, any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. If you find that the agreement between Plaintiff and Defendant as to Plaintiff's compensation was reasonable, considering all of the circumstances, then you must

---

[1] The parties also cite the nearly identical federal provision that is contained in 29 CFR § 785.23, which provides, in part:

"An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted."

find that the agreement is conclusive as to the amount of time Plaintiff is considered as working."[2]

■ Defendant contends that OAR 839-20-042(3) "is determinative of the overtime question." That is not entirely correct. The rule has no effect on the question of *whether* an employee is subject to Oregon's overtime compensation standard, or whether the employee is instead working in one of the "exempt employment" settings to which the overtime standard does not apply. *See, e.g.,* ORS 653.261(3). The "hours worked" rule also does not provide an *exception* to the overtime compensation standard. It simply provides, for a very specific employment setting, a method for calculating the number of hours that are deemed "work." That number, multiplied by the number of days worked during the week, determines whether the employee should receive overtime. For example, if the factfinder determines that the parties agreed that a 24-hour shift would translate into eight hours of compensable work, and if the factfinder further determines that that agreement was reasonable and took into consideration all of the pertinent facts of the particular employment situation, then that agreement will be accepted as determinative that the employee worked eight hours each day. If the number of days worked per week exceeded five, then the total number of hours worked per week would be "in excess of forty (40) hours," and compensation for the excess hours would be paid at the time-and-a-half rate, pursuant to OAR 839-20-030.

■ Here, the jury was properly instructed to decide whether the parties had entered into a reasonable agreement that established the number of hours that would be deemed "hours worked." It was told that the agreement would be "conclusive as to the amount of time plaintiff is considered as working."[3] Based on the evidence before it, the jury found that the parties had not entered into such an agreement. There is evidence to support that determination. We find no basis for defendant's claim of error.

---

[2] The trial court correctly informed the jury that the "hours worked" rule, which relates to overtime compensation, does not allow parties to agree that they will not be bound by state *minimum wage* standards. *See* ORS 653.025; ORS 653.055(2).

[3] The jury was also instructed that plaintiff qualified for overtime compensation "unless you find the employer was exempted from overtime due to an agreement about the hours worked."

■ Next, defendant assigns error to the trial court's refusal to instruct the jury that plaintiff would not be entitled to recover on her minimum wage claim if the jurors found that the state "multiunit accommodations" exception applied to her.[4] The court decided, as a matter of law, that the multiunit accommodations exception does not apply to plaintiff. It instructed the jury that, although plaintiff was entitled to receive a minimum wage, defendant was allowed to deduct from that wage the fair market value of meals, lodging and facilities that it furnished. *See* OAR 839-20-025(1). Defendant challenges the court's conclusion that plaintiff does not come within the multiunit accommodations exception. We conclude that the trial court did not err, for the following reasons.

As a general rule, employees in Oregon must be compensated at a wage rate not less than that provided by statute. ORS 653.025. One of the exceptions to that rule is contained in ORS 653.020(9), which provides that minimum wage requirements do not apply to any employee who is

"domiciled at multiunit accommodations designed to provide other people with temporary or permanent lodging, for the purpose of maintenance, management or assisting in the management of same."

Defendant argues that plaintiff falls within that exception, because she managed and resided at the foster care home and the home is a "multiunit" living facility "designed to provide others with temporary or permanent lodging." It is undisputed that, if plaintiff does not come within the multiunit accommodations exception, ORS 653.020(9), she is entitled to minimum wage under Oregon law, because none of the other state minimum wage exceptions apply to her.

The text of the multiunit accommodations exception identifies the category of employees to which it applies by describing the type of work done: maintenance or management. Under a plain reading of the statute, the only employees who undeniably fit within its terms are hotel, motel and apartment managers who live on the premises. Although there may be other types of employment that also fit within its terms, the

---

[4] Defendant also challenges the trial court's denial of its motion for a directed verdict, motion for a judgment notwithstanding the verdict and motion for a new trial, all of which were based on the "multiunit accommodations" exception.

language of the statute leads us to conclude that it does not apply to employees such as plaintiff. Plaintiff's work is carried out in a single house with bedrooms and a common kitchen and living area. Under normal circumstances, such a house would not be considered a "multiunit" living facility. Also, the exception applies to employees who, while domiciled at a facility that is designed to provide "lodging," carry out the "maintenance" or "management" responsibilities associated with the facility. The residents of an adult foster care home pay for and receive more than mere lodging, and plaintiff's duties include far more than traditional "maintenance" or "management." Plaintiff cooks meals, cleans, does laundry, administers medications and assists residents with bathing and dressing, tasks that readily fall into the category referred to by the parties and described in the statutes as "companionship services." *See* ORS 653.020(14).[5] The trial court correctly concluded that the multiunit accommodations exception does not apply to plaintiff. Further, it did not err in refusing to give defendant's requested instruction, because federal minimum wage law contains no multiunit accommodations exception, and, as we will explain below, even if the state exception had applied to plaintiff, she would have been entitled to rely on the more advantageous of the two laws.

To summarize, we find no error in the portion of the trial that related to plaintiff's state-based overtime and minimum wage claims. On the overtime compensation claim, the jury was properly instructed to consider whether the facts supported an application of the "hours worked" rule contained in OAR 839-20-042(3). On the minimum wage claim, the jury was properly instructed that plaintiff was entitled to receive a minimum wage, minus deductions for meals, lodging and facilities.

 Defendant also challenges the trial court's treatment of two jury instructions that related to plaintiff's *federal* minimum wage and overtime claims. One instruction was

---

[5] ORS 653.020(14) provides that state minimum wage standards do not apply to

"[a]n individual employed in domestic service employment in or about a family home to provide companionship services for individuals who, because of age or infirmity, are unable to care for themselves."

The parties agree that plaintiff does not fit within that exception because she was not employed "in or about a family home."

requested by defendant, but not given, and the second was given, but, according to defendant, it should not have been. As to the instruction that defendant requested, we need only note that when a business is subject to *both* federal and state wage laws, as is defendant's,[6] it must comply with whichever law is "most advantageous to employees." OAR 839-20-115(3). If the federal Fair Labor Standards Act (FLSA) exempts a category of employees from overtime standards, but state law does not contain that exemption, state law applies. *Williams v. W.M.A. Transit Co.*, 472 F2d 1258, 1261 (DC Cir 1972); *see also* 29 USC § 218(a) (no provision of the FLSA shall justify non-compliance with any state law that establishes a higher minimum wage standard).

In short, the employer is bound by the law that provides coverage. Accordingly, even if an employee falls within a federal wage law exemption, the jury need not be instructed on that exemption when there is no corresponding state exemption. Here, the trial court properly refused to give defendant's requested instruction, which was based on the "companionship services" exemption contained in 29 CFR § 552.6,[7] because even assuming that that exemption allows employers to pay less than minimum wage to persons who provide companionship services in adult foster care homes—an issue that is hotly debated by the parties—state law does not, and state law is therefore more advantageous to plaintiff. *See* n 5, *supra*.

■ The second challenged instruction, which summarized the requirements of 29 USC § 207(f),[8] was offered by

---

[6] The federal Fair Labor Standards Act applies to defendant, because defendant is an "enterprise engaged in commerce or in the production of goods for commerce," which is defined in part as an enterprise that

"is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preshool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)[.]" 29 USC § 203(s)(1)(B).

[7] 29 CFR § 552.6 exempts from federal minimum wage requirements employees who provide care for the elderly by preparing meals, washing laundry, cleaning the house and performing other similar services.

[8] 29 USC § 207 provides, in part:

"(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce * * * for a workweek longer than 40 hours

plaintiff in response to defendant's affirmative defense that the parties' employment agreement "constitutes an exemption to the overtime provisions of * * * the Federal Fair Labor Standards Act." Defendant did not cite the particular provision on which that assertion was based. Although we agree that the relevance of plaintiff's requested instruction was questionable, *see* 29 CFR § 778.404 - .406, the error, if any, was harmless, because the jury was properly instructed as to the state standards for overtime compensation and it specifically found that the parties had *not* entered into the type of employment agreement that would affect the calculation of overtime compensation.

■ Next, defendant contends that plaintiff failed to establish her discrimination claim by a preponderance of the evidence. Specifically, it argues that she failed to prove the existence of a physical disability,[9] failed to demonstrate that she could perform her duties if she had reasonable accommodation, ORS 659.425, and failed to show that her physical impairment was a substantial factor in her termination.

At trial, defendant sought to establish that it had fired plaintiff because of her job performance, not because of her inability to transfer patients by herself. It also sought to show that it did not know of plaintiff's physical limitation and

---

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"* * * * *

"(f) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) if such employee is employed pursuant to a bona fide individual contract, * * * if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate * * * and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

[9] Defendant also argues that plaintiff should have been precluded from raising the question of whether she had a physical impairment, because the Workers' Compensation Board had previously determined that she did not. That argument, which rests on a determination of whether an administrative proceeding has preclusive effect in a subsequent civil action, has been resolved contrary to defendant's position. *Hickey v. Settlemier*, 318 Or 196, 864 P2d 372 (1993); *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 862 P2d 1293 (1993). Whether plaintiff had suffered a *compensable* injury was not at issue in this case.

that, even if it did know of the limitation, it would not have been required to accommodate plaintiff because the cost of having a second employee available to help her would have been prohibitive. Defendant argues that it offered a number of reasons for its termination of plaintiff, and all of the reasons were unrelated to any physical impairment that plaintiff may have had.

Plaintiff sought to convince the jury that her termination was due to defendant's desire to hire a manager who could lift residents. None of the prospective residents was ambulatory and, therefore, none could have been cared for by plaintiff. Plaintiff contended that, rather than turn down all of the applicants who had called to inquire about the space that had become available at the Lemming Street house, defendant decided to fire her.

In sum, the jury was presented with two different explanations for plaintiff's termination. It chose to accept plaintiff's explanation. There is evidence to support that choice and we, therefore, may not disturb it.

Finally, during the pendency of this appeal, plaintiff moved to amend the complaint to name an additional defendant. This is not the appropriate time or forum for such a motion. It is denied.

Affirmed; motion to amend complaint denied.